All right, and then in calling the next case, we'll hear from counsel in Vickie Thorne v. Pep Boys. We have Mr. Shawquist for the appellant. Present, Your Honor. You may proceed. Good afternoon, and may it please the court. Are we having audio problems, Greg? Are you OK, Mr. Shawquist? I am. I just hear somebody talking in the background. OK, I think it wasn't any of us. That's a bad sign. Starting to hear voices, not good. We're near, we're ready. Yes. Good afternoon, and may it please the court. My name is Rob Shawquist representing appellant plaintiff Vickie Thorne, and I'm asking to reserve two minutes of my allotted time for rebuttal. Granted. The three issues before this court are interrelated, as they involve the court rewriting. Oh, you're cutting out again. No, I think Mr. Shawquist stopped talking. Yeah, he stopped talking. Are you getting feedback, Mr. Shawquist? I am. I'm on about a 40 second delay. I'm hearing our initial conversation. You know, Mr. Shawquist, apologies for the interruption. I think you have the live stream running, the YouTube link that you were listening to. You probably still have that up. So if you want to close that or disable it. Not that our previous conversation isn't great. I mean, I don't mind hearing it twice. Can you hear me now? Yes. Yes. Thank you, Mr. Shawquist. Start again, please. The three issues before this court are interrelated, as they all include the district court rewriting the statutes and regulations which provide the duty for the state court claims that have been actually alleged here. Specifically, the issues are whether the district court erred when it carves Pep Boys out of the comprehensive vehicle part safety registry by first rewriting the regulations to require a recall before the duty is triggered, second, by finding that a requirement of no charge to the customer renders the service valueless, even when the promised service is not provided. I don't understand how that's a rewriting of the statute since we are in the context right now of discussing standing. Well, to look at the actual statutory language, and more specifically, the regulatory language, it speaks in terms of shall. Everybody shall do registration. The registration should take place. But that may go to nothing more than the manner in which the defendant here, Pep Boys, allegedly violated or did not act consistent with the regulation. It doesn't necessarily go to issues of harm that, if they exist, would provide or may provide a basis for standing here. In other words, you would concede at the outset, would you not, that a mere violation, if you will, or a mere deviation from requirements of a regulation does not give to a particular individual standing in a claim against the non-compliant individual or business entity. We actually believe that it does, Your Honor. There's a tension between us and Pep Boys. Aren't there plenty of cases that suggest to the contrary that the mere violation of a regulatory regime in and of itself is not a basis to afford to your clients or to similarly situated individuals vis-a-vis a regulatory scheme a basis for standing? I think the Third Circuit precedent itself actually supports what we're asking the court to do here, specific to your question. Which case? The Kamal case. It's a fact a case, right? That's a fact a case. And in that case, it's a procedure case. It's in that case. Yeah, look at the facts there. The court said that there was a highly speculative chain of future events. Now, why doesn't that actually undermine your position? Because your position is that there's some injury here just by virtue of not having it registered. And the way Kamal seems to be saying is that, no, you've got to show something that would actually have caused you hurt or harm. And to get to where you need to get, you have to assume there would be a recall and that they wouldn't be able to reach her or that something along those lines would happen, none of which has happened. Why does Kamal undermine you? We specifically said procedural record-keeping violations do not constitute an injury, in fact, in and of themselves, absent some congressional intent in the statute to give right to a private cause of action. And I don't see that here. I'm not sure you're arguing that. But it's clearly not coming out of Kamal. Go ahead, Mr. Shelchquist. To answer Judge Smith's question first, we do argue that the regulatory scheme is set up so that if any part of the regulatory scheme is violated, it is a violation in and of itself. By analogy, you don't have to. A violation of a regulatory scheme may afford a basis to a government agency that has oversight or enforcement responsibility to act, but it does not ipso facto afford a basis for standing, that is, harm that would give a basis for standing to an individual plaintiff. So please explain your theory of harm. There is harm in and of itself because the chain of a recall is supposed to start by the tire manufacturer having a complete database so that there's no delay between finding a dangerous or defective situation and being able to notify the people. The statute itself requires all- Why isn't that exactly the bare procedural violation spoken of in Kamal? It's not, same thing. They didn't do what they were supposed to do, and we said that's not enough because to get to a real harm, you'd have to have other stuff happen in the future that hasn't happened. Why isn't this Kamal all over again? I think Kamal is distinguishable for a couple of reasons. Number one, in Kamal, Congress itself clarified the fact of statute. And this court gave credit to the fact that Congress said the mere publishing of additional numbers, especially numbers that are publicly available information, such as a bank's routing number, was not actionable. There's no such statement from Congress here with regard to the statute or the regulatory scheme at issue. In addition, Kamal cites four other cases from the Third Circuit. The Horizon case, where the stolen laptop with unencrypted personal data conferred standing. The Cicino case, where a single pre-recorded call leaving a message on a cell phone conferred standing. Saint Pierre, where an account number visible through an enveloped glassine window conferred standing. And Long, not getting copies of background checks used for a job or an interview conferred standing. In each of those instances, unlike FACTA, the regulations set out protectable concrete rights. And we believe that the same thing happens here because the statute itself speaks in terms of, if you follow method one, you have to register at the time of sale. But you know, in each of the cases you've alluded to, the violation of the regulation or statute gave rise to a concrete injury. It wasn't the fact that it was the violation of the regulation or statute that gave standing. It was the concrete injury that resulted from that. And what I'm having trouble getting my hand on here is what is the concrete, by concrete I mean, I won't say tangible because Spokio makes it clear it doesn't have to be tangible. It has to be measurable. It has to be something that we can put a value on. And in the complaint, nowhere does your client plead that there is value X dollars or that by losing the benefit of her bargain, she is out X minus Y dollars. That is the cost of the tires she bought was so much more than the tire, so much less, the value was so much less than the tire she bargained for. None of that is in the complaint. Well, it's true that we have not put in a precise number that a registered tire is worth X. You don't have to put in a precise number, but don't you have to at least allege some basis if you're relying on economic harm for how she has been harmed economically? I think we've alleged that in two ways, Your Honor. From the plaintiff's perspective, we've alleged facts stating that she paid for a compliant tire, she didn't get a compliant tire, and that a compliant tire is worth more than a non-compliant tire. Oh, so you're saying that this is a product defect merely because the seller did not follow through with the regulatory requirement of submitting this form? That is in the brief and the regulatory system is set up and the congressional system is set up that the violation of- Mr. Shukwas, did your client try to register this tire herself? She has not. Is there any allegation? Okay, if this is a defect, is that not a defect that is instantly remediable by herself? Tomorrow, she could send her name to the manufacturer. She could, and then she loses standing and she loses the benefit of the bargain because we've also alleged that she has to spend time- Stop, hold on. She's lost standing. Are you suggesting that Congress intended and the regulatory agencies intended to set up a schema in which people are better off not registering, where the distributor doesn't register them so that they can sue instead of a system in which they can take care of a problem by registering? You're thinking that's the system that's supposed to be in place? I am not arguing that, Your Honor. I'm saying she loses standing on the issue that we've been discussing. However, the secondary damages theory is that she then has had to spend time and effort to rectify what should have been provided to her by Pep Boys because of damage. That's an option open to Pep Boys. There are three ways they can do it, and you've acknowledged that in your briefing. They could hand her a card and say, you take care of it. Or they could do this electronically. And then there's a third manner. Losing track of that right now, but there's a third way in which- They completely fill out the card and send it in themselves. They fill out the card and send it in. Okay, so there's three ways it can happen. And one of them is, in fact, the way we were talking about. They just say to her, you take care of it. Here's a card, do it. No, they have to fill out their portion of the card and give it to her. And then she fills out the rest and sends it in. Option two is that they fill in their part and her part and send it in for her. The third way is to electronically provide all the information as well. So I'm saying that they haven't followed any three of those methods. And for her to go register- Well, you haven't said anything about those. You've made allegations about two of them. But the third one, if I'm mistaken, you didn't talk about it. Yeah, you left out number two under the regulation, both in your pleading and your brief, didn't you? I don't believe so. I believe we've seen that they've failed to follow any of the three prescribed methods. Well, you can go back and check it later, but I'm pretty confident that you've relied only on number one and number three that are the terms of the regulation. Yeah, I was looking for that too. And I don't think you've addressed the situation in which the dealer records her name and address on a paper registration form and then submits it to the manufacturer. That's just not addressed. We have alleged below that none of the three methods were followed. I believe our- Yeah, but that's conclusory. You can't just say, I mean, we know this much. You can't just say, you blew the statute, pay me, right? You have to say, you gotta give some factual information, and that's just not in there as to that. I believe in the complaint. We've said they followed none of the three methods. She wasn't given a card. They didn't ask her for her information to fill out a card. And there's nothing on her receipt, which is required by the regulation, saying that they filed it electronically. She's pled as much as we possibly can as to what wasn't provided. Well, we'll be checking too, but I'm not sure you, in fact, it is alleged that she never provided her name and address at the time of purchase. I'm not sure that's in there, but I'll go back and carefully look for it, Mr. Sheldon. Are the serial numbers on the receipt when you, been so long since I've purchased tires, but when you buy tires and get a receipt, at least in this instance, is the serial number of the tire purchased on the receipt? I assume it is, but I just don't know. Your Honor, it is not in this instance. I'm not sure what others in the industry do, but with regard to Pep Boys, that was not on the receipt, and there was no indication on the receipt that they'd actually submitted anything to Pep Boys. Is it legally significant that Congress did not provide for a private right of action here? I don't think it's conclusive. It's obviously something that you can look at to determine whether or not they're standing. However, I would point the court to the 49 CFR 30103 site, where Congress did talk about the interrelation between the safety laws and state law, the causes of action, and allows states to enforce the regulations as written, not changing the rights, duties, or obligations, and conversely saying that if you actually comply with the regulation, it does not absolve you from liability for common law claims that are being alleged. You're not relying upon statutory standing, is that what you're being through, are you? We are. At this point, we are using the statute as creating the duty that supports the state law claims that we alleged. We do believe that there is a violation by not registering in and of itself. That being said, our claims which sound in negligence per se and negligence in consumer fraud are using the statute as evidence of what the standard was that was ultimately breached here. So to the extent that the harm here needs to be concrete, is it your allegation, Ms. Thorne's allegation, that the harm here is simply the denial of compliant tire registration procedure, or is it that you believe that as a consequence of noncompliance, there's increased risk to her person or her property from recalled yet unregistered tires? What is the concreteness? We've alleged both. We've alleged concreteness in terms of money damages. She didn't get the benefit of their bargain. We've alleged damages, money damages in the form of unjust enrichment that the Independent Tire Association, when it was lobbying on these regulations, talked about the time and expense associated with registering the tires, and that they've used that saved time and expense to go for sales or other services to make money. That's the first part of the concreteness. The second part of the answer to your question is, yes, we have talked about the future harm, that within this regulatory scheme, every single part on the vehicle is supposed to be tied to a VIN or a TIN, so that when a determination is made to institute a recall, that complete list is available. The manufacturer doesn't have to scramble to hundreds or thousands of retailers to try to get that list. Mr. Shelquist, this kind of reasoning, wouldn't it lead to the necessary conclusion that any regulatory scheme necessarily implies a private right of action? Anytime the government requires something of somebody, if that person fails to do it, anybody could sue them, because it doesn't matter that there's a comprehensive scheme that it's entrusted to the Secretary of Transportation to enforce, anybody could sue. Where's the end of the logic on this? Where's the cutoff point where somebody wouldn't have a right to sue under the logic you've just explained? I think it occurs in two or three places, Your Honor. The first place it would occur is the language requiring when the registration take place. Either Congress or NHTSA could have said upon the declaration of a defect or upon a recall, it didn't, it said at the time of sale. So the limit here is if they don't do it at the time of sale. The second place that can happen- We're talking past each other. That doesn't, I apologize, but that doesn't answer my question at all. All you've done is repeat what the regulatory requirement is. Nobody's disputing that there's a regulatory requirement. The question we're wrestling with is, does your client have a right to get money because a regulatory requirement wasn't met? So- And you did not allege that she relied upon the regulatory requirement in buying the tower. You mentioned earlier the benefit of the bargain. Nowhere in the complaint is there an allegation that she relied upon a belief that the tower was registered in purchasing that tower, those towers from Pepperprice. We did allege that she purchased or thought she was purchasing a tower that was compliant with all regulations. And to go back to your question, Judge Jordan, I think the second place where this could happen is you would have some sort of preemption statement saying there is no private cause of action. Or in fact, there's some clarification saying- Isn't that right on their head? Like, isn't the default not, you always have a private right of action when there's a regulatory problem? Or is it the default, you get a private right of action when Congress says you have a private right of action? Well, the private right of, with regard to a private right of action, I think you're right. It's when Congress says you have a private right of action. The fact that there isn't a private right of action doesn't foreclose you from using the regulatory duty to provide a duty to support a negligence per se claim or to support a consumer protection claim. That's what we're doing here. But under Spokio, unless I'm mistaken, Spokio's got two things going, right? It says, look at the history and look and see what Congress has said. Those are the two aspects that Spokio teaches we should look to to ask if some intangible harm actually gives rise to standing, correct? That's correct, although. Well, if that's true, and I believe it is, then we should be paying attention to what Congress says. And I search in vain in these regulations that you've cited and in the authorizing statute to find something that indicates that in this scheme of registration, which they wanted for the safety reasons you've accurately described, that they meant for people who buy perfectly sound tires or other equipment to have a lawsuit because of a failure on the regulatory side. I'm not seeing it in the language. Now, maybe there's something in the history or there's something in the language I'm missing, but so far I'm missing it. Well, I think when you look at the entirety of the regulatory scheme, every single part on the vehicle, except for tires, notably except for tires, is tied to the VIN, the Vehicle Identification Number. With regard to the tires, the TIN, the manufacturer who sells it to the new car dealer who sells it to you registers the tires. The tire manufacturer-owned store registers the tires. We're now talking about a subset where Pep Boys is saying, well, everything else needs to be registered except for here. And in essence, what they're saying is you don't have to install a seatbelt in the car until an accident occurs. No, I don't hear them saying that. Here's what I, they'll speak for themselves, but I don't hear them saying we don't have to do this. What I hear them saying is if we blew it and we didn't do this, then we might be in trouble with the government, but that doesn't mean people who are driving around on perfectly good tires can come in and sue us. They don't have standing. They haven't been hurt. That's what I take their argument to be. I guess we'll hear from them in a minute. But that's different from saying no seatbelt. But they have been injured in and of the regulation right now. Pep Boys isn't saying we've got a duty to register. What they're saying is we don't have a duty to register. We can wait until the tire manufacturer reaches out to us and says, all right, you have these names. All right, we'll have you back on rebuttal or whatever time, Mr. Shoklis. We'll have you back on rebuttal and we will hear from Pep Boys through council exactly what their position is. Mr. Toomey. Thank you, your honor. My name is Scott Toomey. It's my privilege to represent the men and women of Pep Boys here today. And I'll answer their question directly. We're making an argument regarding standing. Do you represent Manny and Mo as well as Jack? That's what I want to know. I represent the whole crew, your honor. All right. And they're all Philadelphia born and bred. It's just like the Three Stooges were, I think. Yeah, Manny, Mo, and Curly. Yeah, we're good on trios, I guess. So just to answer the question, we're making an argument regarding standing. Whether or not there's a breach of a duty or whatnot, that's a substantive issue. We're not there. We're talking about whether- Well, it totally is a breach of a duty, it seems to me. That's not the issue before us. It certainly is alleged. So we haven't, you know, it'll be a matter of evidentiary record if he's going to establish a standing. Don't we assume the truth of those allegations, at least that much, not the conclusory statements, but the absence of the registration, the 12B1, we assume the truth of that, right? Well, I think, sure, for purposes of this argument, I think that's fine. The fact is, if there was no registration, she still has suffered only hypothetical damages, risks that haven't manifested and has not established standing or a concrete injury. Is your argument, as Mr. Shelquist said, that you don't have to register until there's a defect? No. I mean, the regulation speaks for itself. And, you know, our issue and our argument here and the basis on which Judge Joyner dismissed both the original complaint and the amended complaint was standing and that the absence of a concrete injury, either economic or non-economic- Absolutely right to do so. Take on the Exum case from the Southern District of Florida, right? Because they took this case and that issue and they thought, in fact, there is a private right of action. They said there's no question that alleged noncompliance with the regulation, if proven true, materially increase the risk of harm to a concrete interest, that is a concrete expectation that the tires would be registered. What's wrong with that reasoning? Well, what's wrong with that reasoning is they didn't just take on the Judge Joyner's decision to dismiss the original complaint in this case. They also took on Kamal. And they said, no, in our circuit, our circuit disagrees with Kamal. We're going a different direction. So they did not have the guidance of Kamal that Judge Joyner had. And they did not have the precedent that says there has to be a concrete injury and that a mere record-keeping violation such as existed in Kamal and such as is alleged here are insufficient without more to establish standing. There was no analysis of history. There was no analysis or analogy drawn to a common law tort. And the fact is that in this case, as well as in Kamal, there is no congressional intent to establish a private cause of action. Congress did not elevate this harm to a concrete or cognizable harm. And they couldn't anyway, because it's not analogous to any common law tort. If all that's right, just one last question here real quick. If all that's right and there's no standing, why did Judge Joyner dismiss with prejudice? Isn't that a merits ruling? Not necessarily. This court has affirmed the dismissal of complaints with prejudice that were dismissed on the basis of standing. It did so in the Finkelman case, in which the district court dismissed the claims of a plaintiff by the name of Hoke Parker, I believe, with prejudice on the basis of standing. And it did so in a more recent case called Zeverman versus paper release. Finkelman was a different case because there the nature of the harm that was alleged really wasn't harm. And we said there, in fact, that the fact that these, I call them fat cats. I don't know what the term in the opinion is, but these insiders, these insiders who are being given the Super Bowl tickets, maybe they could, that decreases the cost of the market, maybe it increases the cost of the ticket. There was no way to be sure. That's not really what we have here. And if we were to send it back, why wouldn't they be able to, forgetting the prejudice part of it, if we would allow them to amend the complaint, why couldn't she amend it to come within the confines of Asprokio? Asprokio was before Camel. We cited Asprokio and Camel. Maybe there is some kind of harm, which is intangible in nature, but of sufficient risk that it fits within the parameters of Asprokio. Why shouldn't she have a chance to allege that? I don't know what it would be, but why shouldn't she have a chance to allege it? So I think the message that I see in the Finkelman dismissal and in Zeverman is that where the failure or inability to establish standing is inherent in the cause of action, that dismissing with prejudice is appropriate. Now, they've already had one chance. Judge Joiner, when he dismissed the original complaint, put right in the opinion that he was providing a roadmap for the plaintiffs to follow in order to properly allege standing under Camel and under Asprokio. And they basically were able to add virtually nothing in the way of additional facts. There was some additional commentary that was added, but the core message of the claim is we've suffered no damage, but we're entitled to recover anyway. Well, if you send it back again, it's still gonna be the same cause of action. Maybe so, but I'm not trying to be wooden, but I thought when you said, I don't have jurisdiction, you necessarily said, I can't speak to the merits at all. And if you can't speak to the merits at all, you can't do something with prejudice, right? You can't say, I mean, you can't imply that you're doing something that affects the merits. All you can say is, I'm out. I don't have anything to do with this. Is there, yeah, I have no power to do anything one way or another. You're in the wrong court. You're in the wrong place, beat it. With prejudice implies I'm ruling on your case. Whereas a standing order ruling says, I'm not ruling on it. I can't rule on it. We're done. Isn't that the way it works? Well, I believe that's sort of the formulation that's set out in the Cottrell case and in the Kamal case, that once there's a finding of a lack of standing, it divests the court of subject matter jurisdiction. However- So should we send it back for dismissal without prejudice and say, look, vacate your order, just dismiss without prejudice, because you're right. You don't have jurisdiction. I think you can issue, you can affirm an order on standing and affirm that Judge Joyner's finding that they've had a chance to establish it and they can't. That's all that's being said. Now, otherwise- No, that isn't all that's being said. And I don't mean to be a stickler on this, but it's important. Like assume for the sake of discussion, we thought you were right and he was right, that there's no standing here and there's therefore no jurisdiction. How can we affirm an order on the merits? How can we do that? Wouldn't we have to say- How can we affirm, period? This court affirms or reverses orders. It doesn't affirm or reverse opinions. Well, so the order dismissed the complaint without prejudice, with prejudice, excuse me. So yes, we're arguing for affirmance of that, the same kind of affirmance that was provided in the Finkelman case and in the Zimmerman case. I think the flip side to the situation that Judge Jordan has described is, let's say it goes back and they're allowed to try to replete again. And we're back up here in third circuit with another motion. We're stuck in a ground plus the defendants, the district court, ultimately this court are stuck in sort of a groundhog day scenario where the only limitations on refiling are the plaintiff's tolerance for filing fees, the plaintiff's persistence or eventually rule 11. So the fact is in this case, the inability to establish standing is part and parcel of the cause of action. If she had damages, that's a different case. That's not this case. This case is based on the fact that there was no recall. There has been no manifestation of harm. There has been no manifestation of physical defect and there can't be, but she's entitled to recover. I'd submit there are no circumstances under which standing can be established based on this amended complaint. And that's why affirmance of the order as it stands is appropriate. Anything further? Gentleman, if nothing else, we'll ask Mr. Shelquist to return on rebuttal. No, your honor, I could rehash what's in the brief. The only point I think I would make is with respect to the argument that the violations regulation somehow forms a per se or de facto defect under the Motor Vehicle Safety Act. In addition to what's in the briefs, the act lays out a comprehensive notification and recall scheme that is addressed only to physical conditions. I mean, and it allows remedies of repair, recall or refund. Those are applicable to physical conditions of the vehicle. The scheme and the arguments that somehow this fits within the term defect or Motor Vehicle Safety Standard within the act, it just doesn't fit, it is not consistent. Otherwise, I will rest on the brief for the remaining issues. Very, very well. Thank you, Mr. Toomey. Mr. Shelquist. Thank you, your honor. I listened very carefully to counsel's arguments. I still don't hear them acknowledging that the regulation requires them to register either at sale or within 30 days of the sale. And I think that's where the court got it wrong because it goes back and forth between, well, you don't have to register or you don't have standing, I should say, until there's a recall or until there's a defect. That's not what the regulation says. You can't rewrite it in that way. Second, the district court- I gotta hold you up because this is a thing you said right at the jump. How is that a rewriting? We're talking about standing here. I didn't hear them argue, Mr. Shelquist, that there's not a duty. They've got a duty. We're accepting for purposes of this discussion that they've got a duty. Please speak to the point of the district court saying they blew the duty, but you don't have a cognizable harm. You just don't have a cognizable harm right now. The court jumped to the conclusion that there's no cognizable harm by not actually quoting the three methods which say when the service needs to take place. The harm does not do. They blew the duty. Go from there. So the duty's been blown. They did not satisfy their statutory or regulatory obligation. In terms of your client harm, either intangible or tangible, I understand your benefit of the bargain argument, but you can't quantify that. They blew the duty, so what? Where does that get us? I believe you can quantify the benefit of the bargain. You can show what a fully compliant tire is worth and what a non-compliant tire is worth and sue on that delta. In addition- You didn't do that. We said that a compliant tire is worth more. We don't have to prove, well, we don't have to prove in the complaint what that amount is. The fact of the matter is there is a delta. It's, when you say the fact of the matter is, isn't that sort of the definition of a conclusory allegation? I don't have to say, I don't have to give you the reason. I don't have to give you an explanation. I don't have to give you a fact. I just can assert there's a delta. Don't you have to, beyond conclusory allegations, say something that would allow a court to say, yes, somebody would pay more for that tire if they knew that the postcard got sent as opposed to the postcard didn't get sent? Well, the opposite is they would pay less if they're not driving on a fully compliant tire. If they knew they could go to the Goodyear-owned store and get the tire and it's registered, they're gonna choose to go with the compliant route instead of the non-compliant route. Going back to Judge McKee's question, the plaintiff is stuck. She goes out and registers and spends her time and energy and goes to the expense of doing this and is not compensated for what is supposed to be provided. The statute itself that Judge Joyner cited says you're supposed to provide this for free. He's recognizing that there's an economic value associated with this and you can't charge for it. It's a fact issue as to whether or not they did charge for it even though they didn't provide it. And then third, from the unjust enrichment defense perspective, they have saved time and effort by not complying with this regulation and use that time and effort to make money doing something else. We know that because it's industry association in the regulatory history is quantified. How much it costs for them to register a tire or a set of four tires. That is what we'd alleged in our complaint. And if the court is going to remand this case, I would respectfully request that we get a right to replead because if this is an issue about not adequately pleading the damages or damages model, I think we can fix that. If this is an issue about future harm, we've talked to that issue. I think we can supplement that issue. If this is going to be that you rewrite the regulation so that there has to be a- All right, nobody is rewriting the regulation. Please don't return to that, Mr. Shulk. The district court didn't do that and we certainly don't intend to do it as well. We understand your position. We'll take the case under advisement and I'll ask the court to recess the proceedings.